# CIVIL COVER SHEET

JS 44 (Rev. 12/07, NJ 5/08)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

MARILYN RIZERA, and all others similarly situated.

**(b)** County of Residence of First Listed Plaintiff   Camden County, NJ

**(c)** Attorney's (Firm Name, Address, Telephone Number and Email Address)

Ruben Honik, Esquire, Richard Golomb and Kenneth J. Grunfeld, Esquire
Golomb & Honik, P.C.
1515 Market Street, Suite 1100
Philadelphia, PA 19102

## DEFENDANTS

HSBC Bank USA, Inc. and HSBC Card Services, Inc.

County of Residence of First Listed Defendant   New York

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☒ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332

Brief description of cause:
Breach of Contract, violation of NJ CFA due to fraudulent, unfair and abusive practices

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Over $5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes  ☐ No

## VIII. RELATED CASE(S) (See instructions):

JUDGE _____   DOCKET NUMBER _____

Explanation:

DATE  7/2/2010

SIGNATURE OF ATTORNEY OF RECORD

07/01/2010

Ruben Honik, Esquire
Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
(215) 985-9177

## IN THE UNITED STATES COURT
## DISTRICT OF NEW JERSEY (CAMDEN)

MARILYN RIZERA and all others
similarly situated,

### PLAINTIFF

v.

HSBC BANK USA INC., and HSBC
CARD SERVICES, INC.                              CIVIL ACTION NO. _____

### DEFENDANTS

### Class Action Complaint

Plaintiff MARILYN RIZERA, individually and on behalf of all others similarly situated

(the "Class"), bring this class action against Defendants HSBC BANK USA INC and HSBC

CARD SERVICES, INC. (collectively referred to as "HSBC" or the "Company").   Plaintiff

seeks certification of this matter as a class action.   Plaintiff, by and through her attorneys,

submits this Class Action Complaint (the "Complaint") against the defendants named herein and

allege as follows:

1

## NATURE OF THE ACTION

1.      This proposed or putative class action stems from the illicit activities undertaken by HSBC while marketing and selling products associated with their credit cards known as "Personal Account Protection," "Personal Account Protection Elite," "Account Benefits," "Account Secure Plus" and other monikers that all offer similar coverage (hereinafter collectively referred to as "Payment Protection").

2.      Although HSBC's Payment Protection is indistinguishable from a contract of credit insurance, Payment Protection is not marketed or sold as insurance.  HSBC does not register Payment Protection with the New Jersey Department of Banking and Insurance, thereby avoiding state regulation.

3.      HSBC violated the law not only through the sale of a product that should be – but is not, due to its unlawful activities – subject to insurance regulations, but also by the deceptive and misleading manner in which it offers the Payment Protection plan to consumers, and the manner in which it administers claims for benefits by consumers.

4.      HSBC markets Payment Protection through direct mail and telemarketing.  It represents Payment Protection as a service that suspends or cancels the required minimum monthly payment due on the subscriber's credit card account and excuses the subscriber from paying the monthly interest charge and the Payment Protection plan fee for a limited period of time, preventing the account from becoming delinquent.  HSBC's marketing for this product claims that "[i]n good times and bad, we've got you covered."[1]

5.      Despite its simple explanation for marketing purposes, HSBC's Payment

---

[1] http://www.personalaccountprotection.com/1/2/3/product_details_howitworks, last viewed on June 1, 2010.

Protection plan is a dense maze of limitations, exclusions and restrictions, making it impossible for customers to determine what Payment Protection covers and whether it is a sound financial choice.

6.     HSBC makes no effort to determine whether a subscriber is eligible for Payment Protection benefits at the time of sale. As a consequence, the Company bills thousands of retired persons (many of whom are senior citizens), along with the unemployed, self-employed, part-time or seasonal New Jersey residents, as well as disabled individuals, for Payment Protection coverage, even though their employment or health status prevents them from receiving benefits under the plan.

7.     Further, HSBC makes no effort to determine whether subscribers become ineligible for Payment Protection benefits after the plan is sold. Accordingly, when subscribers' employment or health statuses change, they will continue to pay for the product even though they may no longer be eligible for benefits under the plan.

8.     Upon information and belief, HSBC requires customers to enroll for Payment Protection coverage before it provides subscribers with the terms and conditions of the plan. It then allegedly offers a 30 day window within which a subscriber may affirmatively cancel the plan. By not adequately disclosing the terms of Payment Protection coverage to consumers before they buy the product, HSBC is violating – among other things – New Jersey's Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 to -166.

9.     Days or weeks after the sale of Payment Protection, HSBC may in some instances mail written material to the subscriber. Given the confusing way the written materials present the terms and conditions of Payment Protection, it would be extremely difficult for a subscriber

3

to decipher those provisions.

10.    In fact, HSBC includes in its marketing campaign the following: "[w]hen you need this coverage, confusing paperwork is the last thing you need."  Instead, it promotes the use of its online and phone services to file claims.

11.    However, HSBC has established its "customer service" support in such a way that subscribers cannot easily cancel the plan or receive answers to benefit questions.  It has established its "claim filing" system such that subscribers cannot easily file claims or receive benefits for filed claims.

12.    HSBC does not refund Payment Protection premiums even after it has denied subscribers claims for Payment Protection benefits, nor does it address subscribers' continued obligations to pay the monthly fee for Payment Protection after a claim has been denied.

13.    Payment Protection is so confusing as to when coverage is triggered, so restricted in terms of the benefits it provides to subscribers, and processing claims is made so difficult by HSBC, that the product is essentially worthless.

14.    HSBC knows that for those subscribers who choose to pay for Payment Protection, few will ever receive benefits under the plan and even for those that do, the amounts paid in "premiums" will usually exceed any benefits paid out.

15.    As a result of its misleading and deceptive marketing practices in connection with sales of Payment Protection, HSBC has increased its profits by many millions of dollars, all thanks to a product which provides no benefits to thousands of New Jersey residents who are nevertheless charged for the product month in and month out.

4

**JURISDICTION AND VENUE**

16.     This Court has jurisdiction over this matter pursuant to the Class Action Fairness

Act, 28 U.S.C. § 1332(d) in that:

(a) This is a class action involving 100 or more class members,

(b) Plaintiff, a citizen of the State of New Jersey, is diverse in citizenship from
Defendants HSBC BANK USA INC. and HSBC CARD SERVICES, INC. which
are incorporated in Maryland and have principal places of business in New York
and Illinois, respectively.

17.     This case is properly maintainable as a class action pursuant to and in accordance

with Rule 23(a) of the Federal Rules of Civil Procedure in that:

- The class, which includes an unknown number of persons but certainly more than
  100, is so numerous that joinder of all members is impractical;

- There are substantial questions of law and fact common to the class including
  those set forth in greater particularity in Paragraph 73 herein;

- This case is properly maintainable as a class action pursuant to Rule 23(b) of the
  Federal Rules of Civil Procedure, in that:

  a.     questions of law and fact enumerated below, which are all common of the
         class, predominate over any questions of law or fact affecting only
         individual members of the class;

  b.     a class action is superior to any other type of action for the fair and
         efficient adjudication of the controversy;

  c.     the relief sought in this class action will effectively and efficiently provide
         relief to all members of the class; and

  d.     there are no unusual difficulties foreseen in the management of this class
         action.

18.     The Court has personal jurisdiction over HSBC, which has at least minimum

contacts with the state of New Jersey because it has conducted business there and has availed

itself of New Jersey's markets through its promotion, sales, and marketing efforts.

5

19.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

20.     This Court is a proper venue in which to bring this action, pursuant to 28 U.S.C. § 1391, inasmuch as a substantial part of the events or omissions giving rise to the claims occurred within the district in which this Court sits.

## PARTIES

21.     Plaintiff MARILYN RIZERA ("Ms. Rizera") resides at 108 Otter Branch Drive, Suite #5, Magnolia, New Jersey.  Since 2009, Ms. Rizera has had one credit card in her name from HSBC bearing Payment Protection features.

22.     Defendant HSBC BANK USA INC. is an indirect wholly owned subsidiary of HSBC HOLDINGS PLC.[2]   HSBC BANK USA INC. is a Maryland company with a principal place of business in New York City, New York.

23.     Defendant HSBC CARD SERVICES, INC. is the U.S. consumer credit card segment of HSBC.  HSBC CARD SERVICES, INC., is a Maryland company with a principal place of business in Illinois.

24.     HSBC markets itself as "the world's local bank."  HSBC serves over 100 million personal customers and over three million commercial customers across its Customer Groups and Global Businesses.  It has around 8,000 offices in 88 countries and territories.  Shares in HSBC Holdings PLC are held by over 220,000 shareholders in 119 countries and territories.[3]

---

[2] HSBC HOLDINGS PLC is not a defendant in this lawsuit.  HSBC HOLDINGS PLC is a public, limited liability international holding company incorporated in England and Wales with a principal place of business in London, England.

[3] *See* http://www.hsbc.com/1/2/investor-relations/overview/fast-facts, last viewed on June 1,

**FACTUAL ALLEGATIONS**

25.     Payment Protection is self-described by HSBC as a non-insurance product. HSBC has not registered or identified Payment Protection as an insurance product with the New Jersey Department of Insurance and Banking or other appropriate authorities.

26.     However, upon information and belief, prior to developing and marketing Payment Protection, HSBC did sell credit insurance products, which it registered with appropriate state authorities.  HSBC's credit insurance products offered substantially the same type of coverage as what is offered today as Payment Protection.[4]

27.     Even though HSBC's previously-offered credit insurance products were nearly indistinguishable from what is now offered as Payment Protection, HSBC does not designate Payment Protection an "insurance product" so it can avoid state regulation and charge higher fees for the product.

28.     Upon information and belief, HSBC offers Payment Protection to all its credit card customers, but aggressively markets this product to vulnerable New Jersey consumers who fall into the subprime credit category, or customers who have low credit limits because of impaired credit ratings.  Specifically, HSBC's Orchard Bank unit issues cards to consumers looking to establish or re-establish their credit.

29.     HSBC markets Payment Protection as a service that will safeguard subscribers' credit card accounts by temporarily suspending the required minimum monthly credit card payments due in certain highly restricted circumstances, or permanently canceling accounts in

---

2010.

[4] Upon information and belief, the same or a similar product as HSBC's Payment Protection plan is marketed and sold in other countries, including the UK and Canada, but is still referred to as "insurance" and subject to rules and regulations applicable to other forms of insurance.

other circumstances.  In such circumstances, the subscribers are also not required to pay the monthly interest charges or the Payment Protection plan fee for the month in question.

30.    HSBC sells Payment Protection to consumers through a number of different channels, including direct mail marketing, in which it may ask that consumers "check the box" to initiate the plan, through telemarketing, where consumers may be asked to press a button on the telephone to approve initiation of the plan, or through unilaterally imposing the Payment Protection feature on consumers' credit cards.

31.    HSBC effectively shifts its burden and duty of full disclosure prior to the sale to the customer and requires subscribers to decipher the terms of the product <u>after it has already been purchased</u> and take action to cancel it.  It characterizes this sales scheme as providing "Satisfaction Guaranteed; A full refund will be provided if you call to cancel within 30 days from your enrollment date."[5]  In fact, the obligation to cancel is affirmative, such that once enrollment is triggered, subscribers are billed for Payment Protection continuously unless some affirmative step is taken to cancel the plan.

32.    Subscribers may later be provided with written materials from HSBC, including a "congratulations" letter and a brochure.   The materials include an Election and Acknowledgement Form for the subscribers' signatures.   However, the form states the "[r]egardless of whether you send this form back to us, you are enrolled in [the plan]."

33.    It is virtually impossible for the subscriber to determine all of the exclusions and limitations of Payment Protection, or the value of the product, based on what is provided.

34.    Upon information and belief, HSBC imposed charges for "Payment Protection" upon New Jersey consumers even though individual consumers did not request the product or

---

[5] http://www.personalaccountprotection.com/1/2/, last viewed on June 1, 2010.

clearly assent to pay for the product in writing after getting the opportunity to review its governing terms.

35.    In some instances, Payment Protection has been unilaterally imposed upon consumers. In other instances, no written materials explaining the terms and conditions were ever provided to subscribers. If Payment Protection is imposed and no written materials are provided, the only way subscribers could ever know they have been enrolled in Payment Protection and are being charged for this product is from noticing a line item fee listed on their monthly credit card statements.

36.    The terms of HSBC's Payment Protection scheme are varied, complicated and always changing. However, all of the various plans provided for some form of payment suspension upon the occurrence of the following events, as it defines the terms: *Unemployment* and *Leave of Absence.*

37.    Payment Protection also provides suspension for *Temporary* or *Permanent Disability.*

38.    Payment Protection also provides suspension for a limited period of time upon the occurrence of a *Life Event*, including marriage, child birth, adoption, college, a home move, and other closely defined events.

39.    Finally, Payment Protection provides cancellation in the event of *Loss of Life.*

40.    The restrictions, limitations and exclusions associated with these events that trigger Payment Protection are expansive and constantly evolving.

41.    The telephone marketing scripts and the written materials provided by HSBC are incomplete, indecipherable, misleading and obfuscatory.

9

42.     As an example of the misleading and obfuscatory language is HSBC's failure to disclose that Payment Protection is actually akin to an insurance product.  Despite this fact, HSBC's marketing materials carefully avoid any use of the word "insurance."  The materials refer to "claims," which indicates that HSBC internally regards this as an insurance product.  The fees paid for Payment Protection by consumers are actually premiums.

43.     According to the written materials which are only provided <u>after</u> the subscriber has already been enrolled in the plan, the following restrictions on Payment Protection are imposed, but because they are in small print and in incomplete, indecipherable, misleading and obfuscatory language, are not readily comprehensible to consumers:

a.      Payment Protection does not apply to persons self-employed or not employed;

b.      Payment Protection does not apply to persons employed part time or seasonally;

c.      Payment Protection does not apply to retired persons;

d.      Payment Protection does not apply for the first 30 days of unemployment or disability;

e.      Payment Protection does not apply unless you initially qualify for state unemployment benefits or have received an employer severance agreement;

f.      Payment Protection is limited to 9 months for "unemployment" and 18 months for "temporary disability;"

g.      Payment Protection does not apply unless you notify the company within 180 days of the Event and provide Verification within 90 days of notification.

h.      Subscribers can not use their credit card for new purchases while Payment Protection benefits are being provided;

i.      Payment Protection coverage is limited to one benefit approval per calendar year; and

j.      Payment Protection requires monthly certification by a physician for the

10

duration of the injury or illness.

44.     Upon information and belief, HSBC is in possession of information, such as date of birth and name of last employer, which would assist it in knowing whether a particular cardholder is eligible for Payment Protection.

45.     However, HSBC makes no reasonable efforts and undertakes no investigation, including review of information in its possession regarding the cardholder, to determine if Payment Protection coverage would apply to the cardholder.  Accordingly, HSBC engages in marketing to enroll individuals in Payment Protection even when it has information in its possession indicating that the product may have limited or no value to the consumer.

46.     HSBC acknowledges that some subscribers are *per se* ineligible to receive Payment Protection benefits:

> There are eligibility requirements, conditions and exclusions that could prevent you from receiving benefits under [the plan].  You should read the terms and conditions for a full explanation of [the plan].[6]

Nevertheless, HSBC still sells these products to its customers.

47.     For instance, New Jersey retired persons, many of whom are senior citizens, are charged for this product even though they are categorically excluded from receiving most or all of the benefits under the plan.  In fact, HSBC does not even ask customers whether they are retired.

48.     Similarly, the benefits offered to self-employed persons are limited, but HSBC nevertheless fails to affirmatively inform self-employed persons of the limitations in benefits when they are enrolled.  In fact, HSBC does not even ask customers whether they are self-

---

[6] http://www.personalaccountprotection.com/1/2/, last viewed on June 1, 2010.

employed.

49.     Further, part-time or seasonal workers are also limited or categorically excluded from receiving benefits.  To qualify for benefits, one needs to work at least 30 hours a week in employment considered to be permanent.   However, HSBC makes no effort to investigate whether any of the New Jersey consumers that pay for Payment Protection are part-time or seasonal.  These terms are not adequately communicated or defined in any HSBC materials.

50.     Finally, benefits are unavailable or limited for disabled persons, but HSBC nevertheless fails to affirmatively inform these individuals of the limitations in benefits when they are enrolled.  In fact, HSBC does not even ask customers whether they are disabled.

51.     The cost of Payment Protection is a monthly charge of $1.35 per $100 of a subscriber's month-ending credit card balance. [7]

52.     For example, if a HSBC credit card customer has a balance on a covered account of $10,000, as a Payment Protection subscriber, the customer owes HSBC $135.00 that month just for Payment Protection coverage.

53.     Payment Protection also provides the added benefit to HSBC of lowering available credit to its subscribers through the imposition of this additional fee.  Further, the imposition of the fee creates a cycle of profitability for HSBC, in that the fee itself increases subscribers' monthly credit balances, which in turn increases Payment Protection fees in upcoming months.

54.     "Customer service" is available for HSBC's Payment Protection subscribers.   To access customer service, subscribers can call a toll free number or send mail to a P.O. Box in Bridgewater, New Jersey.   According to HSBC marketing, "[w]hen you need this coverage,

_____

[7] This is the cost for the "Personal Account Protection Elite" Payment Protection plan.

confusing paperwork is the last thing you need."

55.      Upon information and belief, employees at HSBC's Payment Protection call center are trained to assist subscribers with all questions, including inquiries concerning canceling memberships, plan benefits and filing claims.

56.      HSBC has established its customer service system in such a way that it is difficult for subscribers to cancel Payment Protection, to get detailed information about claim benefits or restrictions, or to file claims.

57.      For example, upon information and belief, employees at HSBC's call center are given authority to deny claims immediately over the phone, but do not have authority to approve claimants to receive benefits in the same manner.

58.      Further, when claims for Payment Protection benefits are denied, HSBC has not implemented a process through which subscribers' Payment Protection premiums are refunded, even if the subscribers are deemed to be *per se* ineligible for Payment Protection benefits.  In fact, if subscribers are denied Payment Protection benefits, HSBC neither affirmatively removes subscribers from Payment Protection enrollment going forward, nor is it HSBC's policy to inform subscribers of their continued obligations pay for Payment Protection even though they have been deemed to be ineligible for benefits.

59.      Payment Protection is a profit center for HSBC and serves the Company's interest in generating fee income, to the detriment of its most vulnerable customers.

60.      Although heralded as coverage designed for a subscriber's peace of mind and for use when times get tough, the Payment Protection device is designed to prey on the financially insecure and is virtually worthless because of the numerous restrictions that are imposed,

13

because of the exclusions of benefits, and because of the administrative and bureaucratic hurdles that are placed in the way of New Jersey subscribers who attempt to secure payments from HSBC under Payment Protection coverage.

### FACTUAL ALLEGATIONS AS TO MARILYN RIZERA

61.     Marilyn Rizera is a 54 year old New Jersey resident.

62.     On January 18, 2009, Ms. Rizera became a Boscov's HSBC credit card holder. At or around the same time, Ms. Rizera became enrolled in HSBC's Payment Protection plan.

63.     Ms. Rizera is disabled.  From the time she enrolled in Payment Protection, up to and through the date of filing of the Complaint, Ms. Rizera has never held a job and received Social Security Disability Income (SSDI).  HSBC never inquired into Ms. Rizera's employment or disability status prior to enrolling her in Payment Protection or any time thereafter.

64.     Ms. Rizera is still enrolled in Payment Protection.  Her credit card account is still charged for Payment Protection every month even though she is virtually ineligible to collect Payment Protection benefits.

### CLASS ACTION ALLEGATIONS

65.     Plaintiff brings this action on her own behalf and on behalf of a class of all other persons similarly situated (the "Class"), pursuant to Rule 23 of the Federal Rules of Civil Procedure.

66.     Plaintiff brings this action as class representatives to recover damages and/or refunds from HSBC for consumer fraud as expressly defined in New Jersey's Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 to -166, injunctive relief and declaratory judgment, and unjust enrichment.

14

67.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a) and (b).

68.     Plaintiff seeks certification of a class comprised of the following New Jersey citizens and consumers:

> All residents of the state of New Jersey who (1) were solicited by HSBC to purchase Payment Protection; and (2) paid for Payment Protection ("Payment Protection Subscribers") at all times the product was sold.

69.     Plaintiff seeks certification of the following subset class comprised of the following New Jersey citizens and consumers:

> All residents of the state of New Jersey who were not eligible for full benefits, or whose eligibility for benefits were limited by express exclusions, including but not limited to those Payment Protection subscribers who were retired, self-employed or part time or seasonal workers, or were disabled, either at the time that they were solicited for and made payments to HSBC for Payment Protection, or any time thereafter while continuing to pay for Payment Protection.

70.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

71.     Excluded from the Class are:

    a.     Defendants and any entities in which Defendants have a controlling interest;

    b.     Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants;

    c.     The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

    d.     Persons or entities with claims for personal injury, wrongful death and/or emotional distress;

    e.     All persons or entities that properly execute and timely file a request for

exclusion from the Class;

f.      Any attorneys representing the Plaintiff or the Class; and

g.      All governmental entities.

72.     <u>Numerosity – Fed. R. Civ. P. 23(a)(1)</u>.  The Class is comprised of over 100 people and possibly hundreds of thousands of individuals who were HSBC customers, the joinder of which in one action would be impracticable.  The exact number or identification of the Class members is presently unknown.  The identity of the Class members is ascertainable.  In addition to rolls maintained by the Defendants and its agents, the Class members may be located and informed of the pendency of this action by a combination of electronic bulletins, e-mail, direct mail and public notice, or other means.  The disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court.

73.     <u>Predominance of Common Questions – Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>.  There is a well-defined community of interest in the questions of law and fact involved affecting members of the Class.  The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a)      Whether HSBC's sales, billing, and marketing scheme as alleged in this Complaint is fraudulent, deceptive, unlawful, and/or unfair in violation of New Jersey law;

b)      Whether HSBC's common and uniform sales, billing, and marketing schemes related to Payment Protection insurance as alleged in this Complaint constitutes a deceptive trade practice as under New Jersey law;

c)      Whether Plaintiff and the Class members are entitled to restitution of all amounts acquired by HSBC's through its common and uniform scheme;

d)      Whether Plaintiff and the Class members are entitled to injunctive relief requiring the disgorgement of all wrongfully collected fees by HSBC;

16

e)    Whether Plaintiff and the Class members are entitled to prospective injunctive relief enjoining HSBC from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme as alleged in this Complaint; and

f)    Whether Plaintiff and the Class members are entitled to recover compensatory and punitive damages as a result of HSBC's wrongful scheme.

74.    <u>Typicality – Fed. R. Civ. P. 23(a)(3)</u>.  Plaintiff asserts claims that are typical of the entire Class, having all been targeted by HSBC as consumers who were improperly assessed charges for Payment Protection, and having paid for this product.  Plaintiff and the Class members have similarly suffered harm arising from HSBC's violations of the law as alleged in this Complaint.

75.    <u>Adequacy – Fed. R. Civ. P. 23(a)(4); 23(g)(1)</u>.    Plaintiff is adequate representatives of the Class because she fits within the class definition and her interests do not conflict with the interests of the Members of the Class she seeks to represent.  Plaintiff is passionate about this litigation personally and will prosecute this action vigorously for the benefit of the entire Class.  Plaintiff is represented by experienced and able attorneys from coordinated law firms that will collectively and jointly serve as class counsel.  Class counsel has litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class.  Plaintiff and class counsel can fairly and adequately protect the interests of all of the Members of the Class.

76.    <u>Superiority – Fed. R. Civ. P. 23(b)(3)</u>.  The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Plaintiff and members of the Class have suffered irreparable harm as a result of

HSBC's fraudulent, deceitful, unlawful, and unfair conduct.   Because of the size of the individual Class members' claims, no Class members could afford to seek legal redress for the wrongs identified in this Complaint.   Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses, as HSBC continues to engage in the unlawful, unfair, and unconscionable conduct that is the subject of this Complaint, and  HSBC would be permitted to retain the proceeds of their violations of law.   Further, individual litigation has the potential to result in inconsistent or contradictory judgments.   A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## COUNT ONE - BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING[8]

77.    Plaintiff restates and re-alleges the preceding paragraphs of the Complaint as though set out here word for word.

78.    Upon information and belief, Plaintiff and HSBC contracted for Payment Protection benefits.

79.    Upon information and belief, the terms and conditions of this agreement are embodied in written materials in the possession of HSBC.

80.     In New Jersey, a covenant of good faith and fair dealing is implied in every contract.  New Jersey has adopted the concepts of general duties of good faith and fair dealing in the performance of a contract as advanced in the Restatement (Second) of Contracts § 205.

81.    Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing.   Good faith and fair dealing, in connection with executing

---

[8] New Jersey treats the breach of the covenant of good faith and fair dealing as a species of a breach of contract claim.  Accordingly, Plaintiff pleads these claims together, in a single count.

contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

82.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain; willful rendering of imperfect performance; abuse of a power to specify terms; and interference with or failure to cooperate in the other party's performance.

83.     HSBC has breached the covenant of good faith and fair dealing inherent in the Payment Protection agreement.

84.     Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them in the Payment Protection agreement.

85.     Plaintiff and members of the Class have sustained damages as a result of HSBC's breach of the covenant of good faith and fair dealing.

## COUNT TWO – UNCONSCIONABILITY

86.    Plaintiff restates and re-alleges the preceding paragraphs of the Complaint as though set out here word for word.

87.    HSBC's Payment Protection policies and practices are substantively and procedurally unconscionable in the following material respects, among others:

a.    HSBC unilaterally imposes Payment Protection upon its customers' credit card accounts, thereby failing to disclose to customers that Payment Protection is an optional plan and that they have the option to "opt out" of Payment Protection;

b.    HSBC did not obtain affirmative consent from subscribers prior to enrolling them in Payment Protection;

c.    HSBC does not provide the terms and conditions of Payment Protection to subscribers until <u>after</u> they have enrolled in the plan;

d.    The written documents that CITI does eventually provide to subscribers, referred to by CITI as a Welcome Kit, does not provide subscribers with sufficient information to understand the terms and conditions of Payment Protection;

e.    The "congratulations" letter and brochure, along with other written materials in the possession of HSBC, are contracts of adhesion in that they are standardized forms, imposed and drafted by HSBC, which is a party of vastly superior bargaining strength, and only relegates to the subscriber the opportunity to adhere to them or reject the agreement in its entirety;

f.    These documents provided to customers are ineffective, ambiguous, deceptive, unfair, and misleading in that they do not require affirmative customer consent (like a signature) and do not unambiguously state that certain customers are *per se* ineligible to receive benefits, even though HSBC had the information and means of determining eligibility prior to enrolling these customers in Payment Protection;

g.    HSBC does not alert customers that certain individuals are *per se* ineligible for Payment Protection benefits, including but not limited to retired, unemployed, self-employed, persons employed on a part-time or seasonal basis and those that are disabled.

h.    The amount charged in fees for Payment Protection is not rationally related to the amount of value Payment Protection provides to subscribers,

nor is the value of Payment Protection computable or discernable by subscribers;

i.    HSBC charges exorbitant fees for Payment Protection, much more than the value of the benefits offered or paid out to subscribers, and is able to do so because HSBC does not identify Payment Protection as an insurance product, which would require it to provide fees and claims-paid data to state authorities for review and regulation;

j.    The formula HSBC uses to compute Payment Protection fees is misleading such that subscribers are unable to budget for this product or understand its overall cost in order to determine its value to subscribers; and

k.    HSBC operates its customer service centers in such a way as to make it difficult for subscribers to cancel enrollment, obtain information about the terms and conditions of Payment Protection coverage, and file claims, in order for HSBC to maximize the number of Payment Protection subscribers and minimize the amount of benefits it pays to these subscribers.

88.    Considering the great business acumen and experience of HSBC in relation to Plaintiff and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

89.    The imposition of Payment Protection fees which excessively exceed the amount of claims-paid by a rate higher than any insurance product would be permitted to charge for premiums is itself unconscionable. Such fees are not reasonably related to HSBC's costs of administering the plan and providing the benefits offered.

90.    Plaintiff and members of the Class have sustained damages as a result of HSBC's unconscionable policies and practices as alleged herein.

## COUNT THREE – VIOLATIONS OF THE NEW
## JERSEY CONSUMER FRAUD ACT
### (N.J. Stat. Ann. §§ 56:8-1 to -166)

91.     Plaintiff restates and re-alleges the preceding paragraphs of the Complaint as though set out here word for word.

92.     Defendants' Payment Protection plan constitutes "merchandise" for purposes of New Jersey's Consumer Fraud Act.  *See* N.J. Stat. Ann. § 56:8-2 (declaring unlawful the use of deceptive or fraudulent practices in connection with the sale of "merchandise").

93.     Each Plaintiff is a "person," as defined in N.J. Stat. Ann. § 56:8-1(d), who has purchased Payment Protection coverage.

94.     Each Defendant is a "person" as defined in N.J. Stat. Ann. § 56:8-1(d).

95.     Through its conduct, as described in preceding paragraphs of this Complaint, HSBC has committed unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, and omission of material facts with intent that others rely upon such concealment, suppression, and omission, all in connection with the sale of Payment Protection coverage.  This conduct is expressly declared unlawful by the Consumer Fraud Act.

96.     As a result of HSBC's activities which offend the Consumer Fraud Act, Plaintiff has suffered an ascertainable loss of money and property.  Specifically, Plaintiff has become responsible for the payments attributable to Payment Protection coverage, even though that service is virtually worthless to Plaintiff.

97.     Plaintiff seeks judicial orders of an equitable nature against HSBC, including, but not limited to, orders declaring HSBC's practices to be unlawful, unfair, unconscionable and/or

deceptive, and enjoining HSBC from undertaking any further unlawful, unfair, unconscionable, and/or deceptive acts or omissions.

98.    Plaintiff and the Class seek disgorgement and restitution plus interest on damages at the legal rate, as well as three times the amount of their damages caused by HSBC's violations of the Consumer Fraud Act.

99.    Because Plaintiff seeks to enforce an important right affecting the public interest, Plaintiff requests an award of attorneys' fees and costs on behalf of herself and the Class.

100.    Due to HSBC's violations of the Consumer Fraud Act prohibiting unfair and deceptive acts and practices, Plaintiff and members of the Class have suffered monetary damages for which HSBC is liable.

## COUNT FOUR – INJUNCTIVE RELIEF
## PAYMENT PROTECTION RESTITUTION

101.    Plaintiff restates and re-alleges the preceding paragraphs of this Complaint as though set out here word for word.

102.    Plaintiff asks the Court to grant the remedy of restitution to herself and to all members of the Class who made payments to HSBC for Payment Protection.  The Plaintiff asks the Court to grant the following relief:

a)    a refund of all Payment Protection payments made to HSBC;

b)    a refund to any consumers who were retired at the time they were sold Payment Protection by HSBC or at any time they paid for Payment Protection;

c)    a refund to any consumers who were ineligible for benefits, or who faced additional restrictions to receive benefits as a result of their health or employment status, at the time they were sold Payment Protection by HSBC or at any time they paid for Payment Protection;

d)    a refund to consumers who were otherwise not eligible for Payment

23

Protection benefits at any time they paid for Payment Protection; and/or

e)   a refund of all amounts HSBC assessed for Payment Protection that were in excess of sums which would have been permissible had HSBC correctly identified the service as insurance.

103.   Plaintiff seeks injunctive relief enjoining HSBC from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme described in this Complaint.

## COUNT FIVE – DECLARATORY RELIEF

104.   Plaintiff restates and re-alleges the preceding paragraphs of this Complaint as though set out here word for word.

105.   Plaintiff seeks a Declaratory Judgment finding that the conduct of HSBC is in violation of the New Jersey Consumer Fraud Act, and enjoining them from continuing in such conduct.

## COUNT SIX – UNJUST ENRICHMENT

106.   Plaintiff restates and re-alleges the preceding paragraphs of this Complaint as though set out here word for word.

107.   In seeking to sell credit cards to Plaintiff and members of the putative Class, HSBC withheld material terms from consumers prior to activation of Payment Protection charges, including the express benefits, limitations, restrictions, and exclusions associated with the product.

108.   HSBC was unjustly enriched by charging Plaintiff and the Class sums for Payment Protection coverage that were in excess of amounts which would have been permissible had HSBC properly identified the service as insurance.

109.   HSBC was unjustly enriched by the practice of signing people up for Payment

24

Protection that never agreed to be plan members.

110.    HSBC was unjustly enriched by the practice of withholding material terms of Payment Protection until after the product was charged to consumers' credit cards.

111.    HSBC was unjustly enriched by their business practice of making it so impermissibly difficult for consumers to actually receive coverage under Payment Protection that the service was virtually worthless.  Such unconscionable acts include, but are not limited to:

      a)      Denying claims over the phone without written explanation;

      b)      Denying claims without sufficient investigation;

      c)      Requiring claimants to submit excessive and duplicate documentation, and/or;

      d)      Establishing a telephone number that does not allow for claimants to speak to a live person, a person in a timely manner, or a person that is properly trained to handle Payment Protection claims, order for the subscriber to successfully file a claim.

112.    HSBC was unjustly enriched by charging Plaintiff and the Class members for illusory benefits.

113.    HSBC was unjustly enriched by charging Plaintiff and the Class members who were retired or were otherwise not eligible to receive payments by the terms of the Payment Protection plan.

114.    As a result of HSBC's actions which constitute unjust enrichment, Plaintiff and Class members suffered actual damages for which HSBC is liable.  HSBC's liability for those damages should be measured by the extent of its unjust enrichment.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays:

       A.    That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.  The Plaintiff is a proper class representative and the best practicable notice of this action is to be provided to members of the Class represented by the Plaintiff;

       B.    That judgment be entered against HSBC and in favor of Plaintiff and the Class on the Causes of Action in this Complaint, for injunctive relief as requested above, and for actual, compensatory, punitive, and treble damages in an amount to be determined at trial;

       C.    That judgment be entered imposing interest on damages, litigation costs, and attorneys' fees against HSBC;

       D.    For all other and further relief as this Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury consisting of twelve persons on all issues so triable.

### GOLOMB & HONIK, P.C.

BY:   /s/ Kennenth J. Grunfeld
       Ruben Honik, Esquire
       Richard M. Golomb, Esquire
       Kenneth J. Grunfeld, Esquire
       1515 Market Street, Suite 1100
       Philadelphia, PA 19102
       (215) 985-9177

       Curtis L. Bowman, Esq.
       Marcus N. Bozeman, Esq.
       Randall K. Pulliam, Esq.
       11311 Arcade Drive, Suite 200
       Little Rock, Arkansas  72212
       CARNEY WILLIAMS BATES
       BOZEMAN & PULLIAM, PLLC
       TEL: (501) 312-8500
       Fax: (501) 312-8505